Margaret COWAN, Administratrix of the ESTATE OF Victoria COOPER, Plaintiff–Appellee,

v.

Michael BREEN, Defendant–Appellant,

Town of North Branford, Consolidated–Defendant–Appellant.

Docket No. 02–9179.

United States Court of Appeals, Second Circuit.

Argued: Sept. 22, 2003.

Decided: Dec. 18, 2003.

Thomas R. Gerarde (John J. Radshaw III, on the brief), Howd & Ludorf, Hartford, CT, for Defendants–Appellants.

David N. Rosen, Rosen & Dolan, PC, New Haven, CT, for Plaintiff–Appellee.

Before: FEINBERG and RAGGI, Circuit Judges, and McKENNA, District Judge.*

FEINBERG, Circuit Judge.

Defendants-appellants Michael Breen, a police officer in the Town of North Branford, and the Town of North Branford (the "Town") appeal from an order of the United States District Court for the District of Connecticut (Dominic J. Squatrito, J.), adopting the Recommended Ruling of United States Magistrate Judge Thomas P. Smith and denying defendants' motion for summary judgment. Plaintiff-appellee Margaret Cowan, administrator of the estate of Victoria Cooper, sued Breen and the Town pursuant to 42 U.S.C. § 1983, alleging that Breen used excessive force in fatally shooting Cooper. Breen and the Town moved for summary judgment, arguing that Breen was entitled to qualified immunity because when he shot Cooper,

* The Honorable Lawrence M. McKenna, of the United States District Court for the Southern District of New York, sitting by designation.

he had an objectively reasonable belief that his life or person was in danger. The Town also argued that it was entitled to summary judgment on Cowan's *Monell* claims.[1] The Recommended Ruling of Magistrate Judge Smith denied summary judgment to Breen and the Town, on the ground that there were genuine issues of material fact to be tried as to the circumstances confronting Breen when he shot Cooper and as to Cowan's *Monell* theories of liability. For the reasons set forth below, we affirm the order of the district court.

## I. Background

### A. The Shooting of Cooper

This suit arises out of events that took place in the early morning hours of July 13, 1999. Many of the facts leading up to the shooting are undisputed. That morning, Breen was on patrol in his police cruiser. As he passed the Xtramart store in North Branford, a parked Camaro with two occupants aroused his suspicion. Breen decided to monitor the vehicle and had its license plate checked by the police dispatcher. The dispatcher reported that the vehicle was registered to John Guerrette, who had a prior criminal history. When the Camaro left the parking lot, Breen followed it eastbound onto Route 80. After noticing some erratic driving, Breen turned on his flashing lights, pulled the Camaro over onto the shoulder of the road, and parked his police cruiser behind it. At that point Route 80 was a two-lane road. Breen then approached the front passenger side of the vehicle. Breen asked the driver, later identified as Steven Guerrette, to provide his driver's license and vehicle registration. Guerrette stated that he did not have his license with him, and

that the car was registered to his brother. Breen then asked the passenger, later identified as Victoria Cooper, for her license, but she indicated that she was not carrying identification. Breen had no further communication with Cooper. Breen ordered Guerrette out of the Camaro and asked him to step to the rear of the car. After a search of Guerrette revealed that he was carrying a substance that resembled narcotics, Breen attempted to arrest him. Guerrette, however, broke away and ran easterly along Route 80 into a wooded area next to the roadway. Breen pursued Guerrette and called for backup, but his portable radio was dead. Breen eventually lost Guerrette in the woods. Giving up the chase, Breen headed west on Route 80 to return to his cruiser.

At this point, the accounts of what happened diverge. According to defendant-appellant Breen, as he walked back on Route 80 to his police cruiser, the Camaro came towards him with its headlights on. Cooper had moved from the passenger seat and was now driving the car. Breen asserts that he waved his arms, signaling the vehicle to stop, but to no avail. He claims that, fearing for his safety, he drew his service weapon and fired twice at the on-coming car. The first shot hit the Camaro's hood. The second shot went through the driver's side window, killing Cooper.

Breen claims that Cooper could have avoided him by turning left off the road, or making a U-turn. Breen also argues that gunshot residue found on the driver's side of the Camaro shows that Breen was very close to the car when he fired the second shot. His expert estimates, from the pattern of broken glass scattered down the

---

1. The reference is to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that mu-

nicipal liability must be premised on a custom or policy of the municipality.

road, that the Camaro was traveling at about 20–30 miles per hour at the time of the second shot.

Plaintiff-appellee Cowan offers a different version of the facts. She claims that the evidence suggests Breen was not in danger when he fired the second, fatal shot at Cooper. First, Cowan points to evidence showing that Breen was over to the side of the vehicle, perhaps as far away as 11 feet, when he fired the second shot. This calculation comes from the reconstruction of the scene by the Connecticut State police, which showed that Breen fired the first shot from a distance of about 44 feet at a 13–degree angle. The reconstruction also revealed, based on the location of the bullet shells and the pattern of broken window glass, that the Camaro was on the far right shoulder of the road when the shots were fired. And Breen's deposition testimony confirms that the vehicle made no turns to the left or right as it traveled down the roadway. Plaintiff Cowan claims that the evidence demonstrates that the vehicle was traveling quite slowly as it came towards Breen, and may not even have been moving at all. A neighbor who saw the police cruiser out of her window and heard the shots fired said in a deposition that Breen was standing in front and to the left of the police cruiser when he fired the shots. From this, Cowan argues that Breen may have shot Cooper before the Camaro had moved even a few feet. Moreover, according to Cowan, the record shows that Breen could not have waved at the approaching car. Cowan argues that if the Camaro were traveling at the speed Breen's expert estimated——20 to 30 miles per hour——the reconstruction evidence shows that it would have covered the distance between where it had been parked and where Breen fired the second shot in about six to six-and-a-half seconds. Cowan contends that in such a short period of time, Breen

would not have been able to wave his hands, unsnap his holster, draw his firearm, and aim and fire. Additionally, in response to Breen's argument that Cooper could have turned left or made a U-turn to avoid him, Cowan argues that Cooper probably did not even see Breen, since an optometrist's report indicates that Cooper had poor night vision and depth perception.

### B. The District Court's Denial of Summary Judgment

Despite the disputed versions of the shooting, defendants-appellants Breen and the Town moved for summary judgment, arguing that the court should follow the analysis set forth in *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Breen and the Town argued that this analysis would lead the court to conclude that no constitutional violation had occurred and that, in any event, Breen was entitled to qualified immunity. Defendants also contended that the analysis should proceed under the Fourteenth rather than the Fourth Amendment because there was no seizure in this case. Additionally, the Town argued that it was entitled to summary judgment on plaintiff Cowan's *Monell* claims, which were based on two theories of liability: (1) the Town failed to train Breen properly; and (2) the Town's "double taps" policy, encouraging police officers always to shoot twice, violated Cooper's constitutional rights.

Magistrate Judge Smith, in his Recommended Ruling, did not address whether analysis should proceed under the Fourteenth or Fourth Amendment, nor did he follow the steps set forth in *Saucier*. Instead, he held that there were disputed issues that precluded summary judgment:

> Where the officer was standing, whether it was in the zone of danger, the speed

and velocity of the Camaro, and the reasonableness *vel non* of the officer's alleged belief that he was in danger are issues which, among others, preclude summary judgment. Any decision on the defense of qualified immunity necessarily must await the presentation of evidence to the jury.

With respect to the *Monell* claims, the magistrate judge ruled that Cowan's theories of liability presented genuine issues of material fact for a jury. Judge Squatrito, in his one-paragraph order, adopted the Recommended Ruling without engaging in the *Saucier* analysis or determining whether the case should proceed under the Fourth or Fourteenth Amendment. This appeal by Breen and the Town followed.

## II. Discussion

To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact, and that when any disputed facts are viewed in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Kerman v. City of New York*, 261 F.3d 229, 234–35 (2d Cir.2001). Breen argues to us that he was entitled to summary judgment because, based on the undisputed facts in the case, (1) no constitutional violation occurred since his conduct in these circumstances was objectively reasonable; and (2) in any event, he was entitled to qualified immunity because he reasonably believed that his conduct was lawful. Breen also contends that the failure of both the magistrate judge and the district judge to conduct a *Saucier* analysis on the qualified immunity defense mandates reversal and remand. The Town argues that judgment should be entered in its favor because if Breen is not liable, it cannot be held liable either.

Cowan argues first that we do not have jurisdiction over this interlocutory appeal. On the merits, Cowan contends that the evidence is disputed, and assuming her version of the facts and construing all inferences in her favor, as we must on this interlocutory appeal from a denial of defendants' motion for summary judgment, a reasonable juror could conclude that Breen's use of force was objectively unreasonable. Cowan also claims that the failure of the magistrate and the district judge to conduct a full *Saucier* analysis does not constitute reversible error.

We consider each of these arguments in turn, reviewing the district court's decision to deny summary judgment de novo. See *Kerman*, 261 F.3d at 234.

### A. Jurisdiction Over Interlocutory Appeal

■ Ordinarily, "the denial of a motion for summary judgment is not immediately appealable because such a decision is not a final judgment." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 38 (2d Cir. 2003). But interlocutory appeals are encouraged in qualified immunity cases because, as the Supreme Court has emphasized, the qualified immunity issue should be resolved early in the proceedings since qualified immunity protects an officer from suit. *Saucier*, 533 U.S. at 200, 121 S.Ct. 2151. The denial of a motion for summary judgment on the ground of qualified immunity is thus immediately appealable, but only to the extent that the district court's denial turns on an issue of law. See *Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones*, 515 U.S. 304, 317–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Martinez v. Simonetti*, 202 F.3d 625, 632 (2d Cir.2000).

■ Plaintiff-appellee Cowan argues that we do not have jurisdiction over this

interlocutory appeal because the district court's denial of summary judgment was not based on an issue of law, but was based on a determination that genuine issues of material fact existed. However, even where the district court rules that material disputes of fact preclude summary judgment on qualified immunity, "we may still exercise interlocutory jurisdiction if the defendant contests the existence of a dispute or the materiality thereof, or . . . contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Tierney v. Davidson,* 133 F.3d 189, 194 (2d Cir.1998); see *O'Bert,* 331 F.3d at 38; *Salim v. Proulx,* 93 F.3d 86, 90–91 (2d Cir.1996). We therefore have jurisdiction over the appeal to the extent it is based on either the undisputed facts or the version of the facts presented by Cowan, and we will disregard any disputed facts or facts that contradict Cowan's version of the events. See *O'Bert,* 331 F.3d at 39.[3]

## B. The Qualified Immunity Test

■ In *Saucier v. Katz,* 533 U.S. at 201–02, 205, 121 S.Ct. 2151, the Supreme Court made clear that in excessive force cases, claims of qualified immunity should be evaluated in the following manner. The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Id.* at 201, 121 S.Ct. 2151; *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The inquiry is whether the alleged use of excessive force was objectively reasonable. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Salim,* 93 F.3d at 91. Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. *Stephenson v. Doe,* 332 F.3d 68, 78 (2d Cir.2003). If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. *Id.* This inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. Resolution of this inquiry is purely legal in that it depends upon whether the law put the officer on notice that his conduct would be clearly unlawful. *Id.*; *Stephenson,* 332 F.3d at 80–81 ("We have said that the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is 'a question of law better left for the court to decide.' ") (quoting *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.1990)). This inquiry adds a "further dimension" to the qualified immunity analysis by acknowledging that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier,* 533 U.S. at 205, 121 S.Ct. 2151. And it ensures that "all but the plainly incompetent or those who knowingly violate the law" are protected from suit. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). We use *Saucier* as a guide as we turn to the merits of Breen's appeal.

## C. The Merits of Breen's Appeal

■ Breen argues that no constitutional violation occurred, and that even if there was a constitutional violation, he is entitled to qualified immunity. As explained

---

**3.** Plaintiff-appellee Cowan conceded at oral argument before us that following *O'Bert,* we have jurisdiction over this interlocutory appeal.

above, whether a constitutional violation occurred focuses on whether the officer's conduct was objectively reasonable. Thus, if the analysis focuses on whether an officer made a reasonable mistake of fact that justified his conduct, what is being examined is whether there was a constitutional violation, not whether the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151; *Stephenson*, 332 F.3d at 78. Whether the officer is entitled to qualified immunity is resolved by the latter part of the *Saucier* analysis, which looks at an "officer's mistake as to what the law requires," *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151; *Stephenson*, 332 F.3d at 79. Thus, when Breen argues that his *conduct* was "objectively reasonable," Appellant's Br. at 45, his contention is that there was no constitutional violation. When he argues instead that even if there was a constitutional violation he is entitled to qualified immunity, then his contention must be that his *belief* that his conduct was *lawful* was reasonable. See *Stephenson*, 332 F.3d at 80 n. 15 ("Qualified immunity is a difficult concept; it looks to the reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct.").

1. Did Breen violate Cooper's constitutional rights?

 On the initial inquiry of whether a constitutional violation occurred, an officer's decision to use deadly force is objectively reasonable only if "the officer has probable cause to believe that the suspect poses a significant threat of death or seri-

ous physical injury to the officer or others," *O'Bert*, 331 F.3d at 36; *see Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). The reasonableness of the officer's decision "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." *Salim*, 93 F.3d at 92. In this case, resolution of whether a constitutional violation occurred centers on whether at the moment Breen decided to fire at the Camaro, he reasonably believed that the approaching vehicle put his life or person in danger.[4] Breen argues that at the moment just prior to pulling the trigger, "the undisputed facts demonstrate that [he] reasonably believed that his life was in danger," Appellant's Br. at 46, and that therefore there was, as a matter of law, no constitutional violation. But in order to accept Breen's argument that, as a matter of law, his actions were objectively reasonable, one would have to accept, as a matter of *fact*, that the Camaro was bearing down on him as he waved his hands, signaling Cooper to stop. Such facts are in dispute.

Although Breen purports to rely only on the undisputed evidence in demonstrating that there was no constitutional violation of Cooper's rights, "his brief on appeal is replete with his own versions of the events." *O'Bert*, 331 F.3d at 38.[5] As al-

---

4. Although Breen emphasizes in his statement of facts and in his repeated listing of the "undisputed facts" that the vehicle-stop was lawful and that he had a right to search the Camaro for contraband, these facts are immaterial since the right to search a vehicle does not justify the use of deadly force to ensure the vehicle does not get away. See *Garner*, 471 U.S. at 11–12, 105 S.Ct. 1694. Deadly

force may be used only where a fleeing suspect poses a grave risk of harm to the officer or others. See *id.* at 11, 105 S.Ct. 1694.

5. For this reason, the cases Breen relies upon, *Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998), and *Lennon v. Miller*, 66 F.3d 416 (2d Cir.1995), are not controlling. In both *Tierney* and *Lennon*, the material facts were not

ready noted, to the extent Breen's version of the events is disputed by Cowan, Breen's version "forms no proper basis for this appeal." *Id.* Instead, to review the district court's interlocutory ruling, where the versions of the facts differ, we must consider Cowan's version and make all permissible inferences in her favor.

As discussed, plaintiff-appellee Cowan presents evidence that the Camaro Cooper was driving was traveling slowly; that Breen was not in front of the vehicle but substantially off to its side when he fired the second, fatal shot; that he did not wave his hands at Cooper; and that the vehicle made no sudden turns as it traveled along the roadway. Also, Breen did not state in his deposition that he fired the second, fatal shot because he believed he was in danger: He said that he fired that shot because he was trained always to fire twice. These facts, according to Cowan, suggest that Breen was not in danger of death or even physical harm when he fired the fatal shot. Looking at *only* Cowan's version of the events thus suggests that no reasonable officer in Breen's position would have believed that at the crucial moment use of deadly force was necessary.

Moreover, even if Breen was in grave danger, Cowan's expert witness evidence casts doubt on whether the decision to shoot under such circumstances was an objectively reasonable one. Cowan's expert stated that proper police procedure when faced with an on-coming vehicle is to get out of the way rather than shoot, since shooting may disable the car or the driver and put the police officer (and any bystanders) in even greater danger. Thus, even if Breen reasonably believed that the on-coming car posed a serious threat of harm to him, if Cowan's evidence is be-

lieved, the decision to fire two shots at the car may well have not been one that a "reasonably competent officer" would have made. *Malley*, 475 U.S. at 341, 106 S.Ct. 1092.

Although Breen's appeal is purportedly based on the undisputed facts in the case, accepting Cowan's version of the facts reveals that Breen is not entitled to judgment as a matter of law on the first issue of whether a constitutional violation occurred. Indeed, it is clear that determination of that issue "turns on which of two conflicting stories best captures what happened on the street," *Saucier*, 533 U.S. at 216, 121 S.Ct. 2151 (Ginsburg, J., concurring in the judgment), making summary judgment inappropriate.

2. Did Breen reasonably believe that his conduct was lawful?

The next step in the *Saucier* analysis requires a court to look at whether it would be clear to a reasonable officer that his conduct was *unlawful* in the situation he confronted. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

a. Was the law clearly established?

■■ Breen, relying on *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), argued in the district court and in his briefs on appeal to us that the Fourteenth, rather than the Fourth Amendment, applied because the instant case did not involve a "seizure" since Cooper had not been arrested when Breen shot her. However, *County of Sacramento* makes clear that a Fourth Amendment seizure occurs " 'when there is a governmental termination of freedom of movement *through means intentionally applied.*' " *Id.* at 844, 118 S.Ct. 1708 (quoting *Brower v. Cty. of Inyo*,

in dispute, 133 F.3d at 195, 66 F.3d at 418, 422, whereas here, despite Breen's representations to the contrary, they clearly are.

489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)). Whether Breen shot Cooper because he felt he was in danger or because he wanted to stop her from getting away, his decision to fire at her was intentional, not accidental. The Fourth Amendment standard therefore applies. *See Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir.2003); *Fisher v. City of Memphis*, 234 F.3d 312, 317–19 (6th Cir.2000). Although Breen argued in his briefs on appeal that the law was not clearly established because *County of Sacramento* was susceptible to an interpretation that the Fourteenth Amendment applied in the circumstances Breen faced, we think the import of *County of Sacramento* and its progeny is clear, and Breen conceded as much at oral argument before us.[6]

b. Did Breen make a reasonable mistake as to what the law required?

Thus, it is clear that Breen's conduct, at the time he shot Cooper, was circumscribed by the Fourth Amendment. As already noted, under the Fourth Amendment it "is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *O'Bert*, 331 F.3d at 36. Thus, Breen would be entitled to qualified immunity if he reasonably believed at the moment he fired at

Cooper that she posed a significant threat of death or serious physical harm to him or others. But this question——whether it was reasonable for Breen to believe that his life or person was in danger——is the very question upon which we have found there are genuine issues of material fact.[7] Because in this case genuine, material, factual disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied.

As the case proceeds to trial, it should be noted that although the factual disputes in the instant case that must be resolved by the jury go both to the excessive force and to the qualified immunity questions, the qualified immunity issue is "a question of law better left for the court to decide," *Warren*, 906 F.2d at 76. Thus, if the jury finds that Breen used excessive force against Cooper, the court should then decide whether Breen is entitled to qualified immunity. *Stephenson*, 332 F.3d at 80. Because this determination relies on the resolution of questions of fact, we recommend, as we did in *Stephenson*, that interrogatories on the key factual disputes be presented to the jury. *Id.* at 81. Answers to questions such as whether Cooper drove her car towards Breen, whether Breen was in the zone of danger, and if so, whether he safely could have gotten out of the way, may not only help focus the jury's attention on the excessive force aspect of the inquiry, but also may help the court resolve the ultimate question of whether it

---

**6.** Breen admitted at oral argument before us, "There are many decisions that say this is a Fourth Amendment case." Tr. at 17.

**7.** From this analysis it appears that at least in some excessive force cases the various parts of the *Saucier* analysis ultimately converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful. See *Saucier*, 533 U.S. at 210, 121 S.Ct. 2151 (Ginsburg, J., concurring in the judgment) (acknowledging that "paradigmati-

cally, the determination of police misconduct in excessive force cases and the availability of qualified immunity both hinge on the same question: Taking into account the particular circumstances confronting the defendant officer, could a reasonable officer, identically situated, have believed the force employed was lawful?"). Even where this convergence occurs, however, courts should follow *Saucier's* step-by-step approach, engaging in "the process for the law's elaboration from case to case." *Id.* at 201, 121 S.Ct. 2151.

would be clear to a reasonable officer in Breen's position that his conduct was unlawful in the situation he confronted.[8]

### D. Whether Failure to Follow the *Saucier* Analysis Mandates Reversal

Breen argues that even if the district court correctly concluded that genuine issues of material fact existed, the decision denying him summary judgment should nevertheless be reversed because the district court, in evaluating Breen's qualified immunity claim, did not engage in the full *Saucier* analysis elaborated above. However, the failure to do so in this case does not, as Breen suggests, warrant reversal. First, as already noted in footnote six above, Breen has conceded that the Fourth rather than the Fourteenth Amendment applies here, making it unnecessary for us to remand for the district court to address this issue. Second, were we to remand, and the district court were to follow the *Saucier* analysis, its conclusion would be no different. As explained above, the finding that genuine issues of material fact exist in this case precludes resolution of both the question whether Breen used excessive force and the question whether he reasonably believed that his use of force was lawful. Thus, reversing and remanding for re-analysis would not produce a different result and would be fruitless. We therefore affirm the district court's order denying Breen summary judgment.[9]

### E. The Town's Appeal

The Town appeals the denial of summary judgment on Cowan's *Monell* claims, arguing that because Breen has no civil rights liability, as a matter of law, the Town cannot be liable based on its failure to train Breen or because of its "double taps" policy, which allegedly encouraged police officers always to shoot twice. Because we have already determined on this record that Breen was not entitled to summary judgment granting him qualified immunity, the Town's arguments must be rejected. Moreover, because a municipality is not entitled to qualified immunity in § 1983 actions, *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Catletti v. Rampe*, 334 F.3d 225, 227 n. 1 (2d Cir.2003), even if Breen was entitled to qualified immunity, if Cooper's constitutional rights were violated, the Town could still be liable. The district court's determination that summary judgment is not appropriate on Cowan's *Monell* claims is affirmed.

### III. Conclusion

We have considered all of the arguments presented by Breen and the Town. For the reasons stated above, we affirm the district court's interlocutory order adopting the magistrate judge's Recommended Ruling and denying defendants' motion for summary judgment, and we remand the case for proceedings consistent with this opinion.

---

**8.** Our examples list only a few of the possible factual disputes and is not meant to be exclusive. We leave it to the district court and the parties to fashion the specific language of the interrogatories. *Stephenson*, 332 F.3d at 81 n. 20.

**9.** Certainly, it would have been helpful for the district court to have done a *Saucier* analysis in the first instance, as it would have ensured resolution of Breen's argument that the Fourth Amendment rather than the Fourteenth Amendment applied and would have helped to "advance understanding of the law," *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151.