MARSHALL, District Court Judge,
dissenting:
I respectfully dissent on the ground that the majority today decides as a matter of law what I believe is a question of fact properly reserved for the jury. The reasonableness of an officer’s use of excessive force pursuant to the Fourth Amendment is a fact-intensive inquiry for the jury, which if raised on summary judgment, must be evaluated in the light most favorable to the victim. See gen. Jeffers v. Gomez, 267 F.3d 895, 905-06 (9th Cir.2001) (collecting cases). Similarly, where the same disputed facts also give rise to both a Fourth Amendment claim and a Fourteenth Amendment “purpose to harm” claim, material and triable issues of fact exist as to both. See Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008).
JURISDICTION
I find we lack jurisdiction to review Torres’s appeal that he is entitled to qualified immunity because there are material issues of fact in dispute. See Johnson v. Jones, 515 U.S. 304, 317-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that a “district court’s denial of a claim of qualified immunity” is immediately appealable only to “the extent it turns on an issue of law”); see also Jeffers, 267 F.3d at 905-06 (concluding that jurisdiction extends only to whether, based on the undisputed facts, the officer is entitled to immunity as a matter of law); Collins v. Jordan, 110 F.3d 1363, 1370 (9th Cir.1997). Torres asks us to: (1) accept his version of the events on the morning of May 8, 2005; and then (2) enter judgment in his favor as a matter of law. See id.-, Armendariz v. Penman, 75 F.3d 1311, 1317 (9th Cir.1996) (en banc); Cowan v. Breen, 352 F.3d 756, 763 (2d Cir.2003) (“Although [the officer] purports to rely on the undisputed evidence ... his brief ... is replete with his own version of the ... to the extent [his version] is disputed by [the victim’s,] [his] forms no proper basis for this appeal.”) (internal citations omitted).
' A reviewing court may not resolve questions of fact in order to reach the legal questions. See id. at 762(“in order to accept [the officer]’s argument that, as a matter of law, his actions were objectively reasonable, one would have to accept, as a matter of fact, that [the victim posed an immediate threat].”) (emphasis in original). A “defendant, entitled to invoke a qualified immunity defense, may not appeal a district court’s summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact.” Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151. Accordingly, we cannot rely on Torres’s version of the events. See Cowan, 352 F.3d at 762; see also McCaslin v. Wilkins, 183 F.3d 775, 779 (8th Cir.1999) (reasoning that a genuine issue of material fact with regard to the threat the victim posed prevented a finding that the officer’s conduct was reasonable as a matter of law).
Based on the foregoing, I would dismiss the appeal for lack of jurisdiction.
*556 QUALIFIED IMMUNITY ON FOURTH AMENDMENT CLAIM
If I were to accept jurisdiction of this case, I would nonetheless affirm the district court’s denial of summary judgment.
The use of deadly force is constitutional only in the most limited of circumstances. See Tennessee v. Garner, 471 U.S. 1, 9-11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Because the reasonableness of the use of deadly force is an extremely fact intensive inquiry, “the propriety of a particular use of force is generally an issue for the jury.” Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir.1994); see also Reed v. Hoy, 909 F.2d 324, 329-30 (9th Cir.1989) cert. denied, 501 U.S. 1250, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991).
Reasonableness is “judged from the perspective of a reasonable officer on the scene”. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The inquiry is objective, rather than subjective. An officer’s own motivations and intentions are irrelevant to the Fourth Amendment analysis, see id. at 397, 109 S.Ct. 1865, because deadly force cases “pose a particularly difficult problem” as “the officer defendant is often the only surviving eye-witness.” Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994). Thus, courts should consider “circumstantial evidence that, if believed, would tend to discredit the police officer’s story”. Id.
The case law requires us to consider whether Torres’s use of deadly force was reasonable in light of the facts most favorable to the Wilkinsons, see Jeffers, 267 F.3d at 905-06, which includes testimony from non-officer eye-witnesses. See id. (courts must protect against chance that the officer will “tak[e] advantage of fact that the witness most likely to contradict [the officer’s] story — the victim — is unable to testify.”); see also Cowan, 352 F.3d at 762 (“[Wjhere the versions of the facts differ, we must consider [the victim]’s version and make all permissible inferences in [his] favor.”). Here, the only non-officer eye-witness, and the one most likely to contradict Torres’s story, is Anthony Davis. See McCaslin, 183 F.3d at 778(affi-davits from non-party eyewitnesses can create material issues of fact).
Statements made by eyewitness Davis who watched the van drive into the side-yard, ER at 307, suggest both that the van never hit Key, ER at 313-316, 320, and that Wilkinson put the van into reverse to prevent hitting Key. ER at 314(“He was trying to turn around and go the other direction, because he didn’t want to run over the cop”), 316(“He wasn’t, like, being erratic ... He was looking for a direction to go ... Like, “Whoa, where do I go?’ ”).
Davis consistently stated — both to the police in an interview that took place just after the shooting and in his affidavit — • that he saw Key:
[S]lip[] on the wet grass, f[a]ll on his back side, was on the ground for only a second or two, then jump[ ] back on his feet, walk[] toward the front of the [ ]van ... [and] st[and] in front of the []van as it backed slowly away from [him].
ER at 307. Davis reiterated on at least three different occasions during his interview with police that: (1) he saw Key walk to the front of the vehicle; and (2) that Key was standing at the front of the vehicle when it started to move slowly backwards. ER at 314, 320, 324.
Then, according to Davis, Torres and Key “made eye contact and appeared to acknowledge each other” and Torres began firing. ER at 308. Davis states that when Torres began firing, the “van was moving in almost the opposite direction from where the officer first stood ... no *557 where near the [ Ivan’s path of travel and not in harm[’s] way.” ER at 308. Davis’s statement that the “van was traveling at such a slow rate of speed that the officer was able to walk in pace with [it] as he repeatedly fired at the driver”, is corroborated by the undisputed forensic evidence that the vehicle moved backwards at about ten miles per hour. Id.
Davis’s declaration and statement to the police create a material issue of fact as to whether Torres had probable cause to believe Wilkinson posed a threat of serious physical harm to officer Key. See McCaslin, 183 F.3d at 778. “Looking at only [Davis]’s version of the events,” no reasonable officer who could see his colleague standing in front of the van would have “believed that at th[at] crucial moment use of deadly force was necessary.” Cowan, 352 F.3d at 763 (emphasis in original). Thus, as in McCaslin, the “[h]ow and what transpired after [the vehicle hit the pole] is the essence of this case and there remains a genuine issue [of] material fact as to what happened ... and how the officers responded”. 183 F.3d at 779 (internal citation omitted). Whether Torres and Key acknowledged each other and whether Key stood in front of the van before the shooting are material questions that cannot be resolved on summary judgment.
Reasonableness is determined from the moment the allegedly deadly shot is fired. Id. at 763(considering whether second, deadly round, was reasonable); Hopkins v. Andaya, 958 F.2d 881, 887 (9th Cir.1992). Accordingly, whether Torres’s second round was justified is also a question for the jury.
Davis told police that immediately after the first volley of shots, he saw Wilkinson slump into his seat and Wilkinson’s hands drop from the steering wheel to his side. Id. at 316. Torres shot again.
Here, the evidence suggests that two seconds intervened between Torres’s first and second volley of shots. First, Torres stated that he made a “quick assessment [after he fired the first shot], and [Wilkinson] had stopped, and ... I fired two more”. ER at 213. Second, the transcript of the audio “radio traffic” indicates that Officer Key transmitted a call of “Shots Fired” at 11:24:41 a.m. ER at 169. Another call of “Shots. Code 3” was transmitted at 11:24:43 a.m. Based on this transcript and Torres’s own statement, a jury could infer that two seconds elapsed before Torres fired again.
Two seconds is sufficient time from which a jury could find that a reasonable officer on the scene could have glanced over at the vehicle, seen that Wilkinson had been shot and that his hands were no longer on the wheel, and forgone the use of deadly force. Thus, based on the record before it, the district court was correct in holding that there were material issues of fact with respect to whether the second round of deadly shots was reasonable.
Furthermore, although the reasonableness analysis discourages courts from second-guessing officers who must make split-second decisions, Graham, 490 U.S. at 396-97, 109 S.Ct. 1865, Torres’s statement that he quickly assessed the scene after he fired the first shot “and [Wilkinson] had stopped, and I fired [again]”, ER at 213, creates a question of fact as to whether Wilkinson had stopped the vehicle before Torres fired the second time.
Thus, I conclude that while “factual conflicts concerning the sequence of events and the true nature of the threat confronting [Officers Key and Torres] might be resolved in [Torres]’s favor at trial, it is neither our job nor the job of the district court to resolve these conflicts”. Andaya, 958 F.2d at 888. The issue of reasonableness presents material questions of fact *558 which must be resolved by the jury. Gates, 27 F.3d at 1443.
QUALIFIED IMMUNITY ON FOURTEENTH AMENDMENT CLAIM
Next, I agree with the district court that the disputed facts preclude summary judgment in favor of Torres on the Wilkinson’s Fourteenth Amendment claim.
Where “actual deliberation” by a police officer prior to using force is impractical, a “purpose of harm” standard applies to due process familial association claims. Porter, 546 F.3d at 1131. “View[ed] in the light most favorable [to the parents asserting the claims], [the facts] must demonstrate that [the officer] acted with a purpose to harmfthe child] that was unrelated to legitimate law enforcement objectives.” Id.
Although I agree with the majority that the purpose to harm standard applies, I conclude that the disputed facts, including Anthony Davis’s portrayal of the events, prevent us from deciding that Torres did not intend to harm Wilkinson as a matter of law. Whether Torres’s conduct “shocks the conscience”, id. at 1136, is for the jury to decide.