23-901-cv
*Moran v. Greco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of April, two thousand twenty-four.

PRESENT:
> ROBERT D. SACK,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

_____

ROBERT MORAN,

> *Plaintiff-Appellee*,

v.                                                                              23-901

ANDREW GRECO,

> *Defendant-Appellant*,

PETER TESEI, JAMES HEAVEY, SEAN P. O'DONNELL, BRIAN N. TORNGA, HAYES SGAGLIO, ALBERT ESCOFFERY, DANIELLE PETRUSO, TOWN OF GREENWICH, CONNECTICUT, GREENWICH POLICE DEPARTMENT,

> *Defendants*.

_____

FOR PLAINTIFF-APPELLEE: ALEXANDER J. WULWICK, Alexander J. Wulwick, Esq., New York, New York.

FOR DEFENDANT-APPELLANT: THOMAS GERARDE, Howd & Ludorf, LLC, Wethersfield, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED** for lack of appellate jurisdiction.

Defendant-Appellant Andrew Greco, a police officer in the Greenwich Police Department, appeals from the partial denial of his motion for summary judgment on Plaintiff-Appellee Robert Moran's claims of excessive force under, 42 U.S.C. § 1983, and state law assault and battery. We review a denial of summary judgment *de novo*, affirming the decision of the district court unless, "after drawing all inferences in favor of the non-moving party, the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y, FSB*, 982 F.3d 139, 141–42 (2d Cir. 2020) (internal quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(a). However, our jurisdiction over an interlocutory appeal of a denial of summary judgment based on qualified immunity extends only to the purely legal question of whether qualified immunity applies to the defendant's conduct, not "the resolution of factual disputes." *Brown v. Halpin*, 885 F.3d 111, 114 (2d Cir. 2018) (per curiam). "[T]he denial of a claim of qualified immunity may appropriately be appealed immediately *only* to the extent that it turns on an issue of law." *In re State Police Litig.*, 88 F.3d 111, 124 (2d Cir. 1996) (internal

quotation marks and citation omitted) (emphasis added)).

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to dismiss for lack of appellate jurisdiction due to the factual disputes identified by the district court with respect to the qualified immunity issue.

## BACKGROUND[1]

Moran's excessive force claim arises from an incident occurring on May 14, 2017 at the apartment of Cynthia Lorys, Moran's then-partner, in Greenwich, Connecticut. While alone at the apartment, Moran experienced an anxiety attack during which he threw food and drinks on the walls, floor, and kitchen, knocked over a dresser, and destroyed other personal property. Lorys returned to the apartment with her daughters and asked Moran to leave. One of Lorys's daughters called 911 to report the vandalism, and while she was on the phone with the Greenwich Police Department, Moran took the phone from her and ended the call.

Officer Greco arrived at the scene, followed by Officer Hayes Sgaglio and Sergeant Sean O'Donnell, and Sergeant O'Donnell asked Moran to sit on the curb. Moran complied. After determining that there was probable cause to arrest Moran, Sergeant O'Donnell informed Moran that he was under arrest and instructed him to lie on the ground. Moran did not comply with Sergeant O'Donnell's instruction, and instead stood up and began to move toward a rear parking lot. Officer Greco and Sergeant O'Donnell brought Moran to the ground and turned him onto his stomach, but were unable to handcuff him because his arms were tucked under his body. Officer

---

[1] The following facts are uncontroverted in the record unless otherwise noted.

3

Albert Escoffery then arrived, grabbed Moran's legs to prevent him from kicking, and used a baton on Moran's legs. Sergeant Danielle Petruso arrived next and placed her foot on Moran's left calf to stop his movement so she could assist with trying to handcuff him. Officers Greco and Sgaglio were able to pull Moran's left arm out from under his body and place a handcuff on his left wrist, but not his right. A sixth and final officer, Brian Tornga, intervened, grabbed Moran's right arm, and succeeded in placing one handcuff from a second set of handcuffs on Moran's right wrist; however, he was unable to connect this set of handcuffs to the set on Moran's left wrist. Officer Greco, holding Moran's left arm behind Moran's back while Moran continued to lie prone on the ground, stated loudly, "We will break your f—ing arm, you better cooperate," and Moran responded, "Why would you do that? It's already locked." Pl.'s Video 0:41–0:57. Several seconds later, Officer Greco moved Moran's left arm forward, towards Moran's head, causing Moran's left upper arm to fracture, with an audible popping sound. After Moran's arm lost tension, Officer Tornga connected the set of handcuffs attached to Moran's right wrist to the set of handcuffs attached to his left wrist.

The present appeal concerns Moran's excessive force claim against Officer Greco for the use of force that resulted in the breaking of Moran's arm, as captured on a video taken by cellphone from a window of the apartment building. Officer Greco asserts that his use of force on Moran's left arm was necessary to gain control of Moran, who was resisting arrest, so that the officers could place him in handcuffs. Moran alleges, however, that Officer Greco unnecessarily "torqued [] Moran's left arm toward his head," even though "Officer [Sgaglio] was holding the handcuffed left wrist on the small of [] Moran's back" and "[t]here was nothing obstructing Officer Tornga from obtaining and connecting the handcuff that was on [] Moran's left wrist." Joint App'x at 414.

4

Thus, Moran contends that Officer Greco gratuitously broke his arm while he was not resisting arrest. In addition to relying on the video of the incident to support his position, Moran argues that Officer Greco gave "internally conflicting versions of the incident." Appellee's Br. at 3. For example, in his deposition, Officer Greco testified that he moved Moran's arm "just to maintain control" and "was not expecting his arm to break," Joint App'x at 394; that he "d[id]n't know what [he (Officer Greco)] was trying to do in that exact moment," *id*.; and that he "wasn't trying to move [Moran's] arm" but rather "was trying to move [his own] body away from [Moran's] arm while maintaining the hold" in order to create room for Officer Tornga to complete the handcuffing, *id*. at 395. Moreover, in two police reports, Officer Greco stated that the popping sound occurred when *Moran* "attempted to roll his body," Joint App'x at 193, 204; and separately, in an interview with a police captain, Officer Greco reported that the popping sound occurred while he was attempting to move Moran's left arm closer to his right one in order to connect the handcuffs, *id*. at 315–16. Moran also relies on his expert who stated that Officer Greco "torqued [Moran's arm] up and that fractured the humerus bone on his left arm" when Officer Greco should have "br[ought] it down where the other arm could have been handcuffed to the first set of handcuffs." Joint App'x at 285.

In his complaint, Moran asserted claims for violations of his constitutional rights and various pendent claims under Connecticut state law against the six officers at the scene, the Town of Greenwich, its former first selectman, its police department, and its police chief. After discovery, the defendants moved for summary judgment. The district court granted summary judgment to the defendants on all claims except for the claims of excessive force and state law assault and battery against Officer Greco. *Moran v. Tesei*, No. 3:19-cv-722 (VAB), 2023 WL

5

3570670, at *17 (D. Conn. May 19, 2023). In so doing, the district court held that, based on the factual disputes in the record, it "[could not] determine as a matter of law whether Officer Greco's use of force was proportional to Mr. Moran's resistance and therefore, reasonable, or if Officer Greco's use of force was gratuitous and therefore, excessive." *Id*. at *11. The district court explained that "[s]uch a determination requires resolving competing accounts of what happened as well as a fact-intensive inquiry that includes assessment of a video taken by a civilian, and therefore, must be resolved by a jury." *Id*. In denying summary judgment on qualified immunity grounds, the district court concluded that "[i]t is clearly established that officers may not gratuitously inflict pain in a manner that is not a reasonable response to the circumstances," and, "[h]ere, there are factual questions that must be resolved by the jury before the Court can determine whether Officer Greco's conduct was excessive and gratuitous and/or intentional and unnecessary." *Id*. at *12 (alterations adopted) (internal quotation marks and citations omitted).

## DISCUSSION

Officer Greco appeals the partial denial of summary judgment only insofar as the district court concluded that it could not determine at this stage, given the disputed issues of material fact, that Officer Greco's conduct was shielded by qualified immunity.

Pursuant to the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the doctrine of qualified immunity protects a government official from liability unless he or she (1) "violated a constitutional [or federal statutory] right" that (2) "was clearly established" at the time of the challenged conduct. *See also Reichle v. Howards*, 566 U.S. 658, 664 (2012). A court may address either prong of the qualified immunity test first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). With respect to the first prong, where, as here, "a plaintiff

6

alleges excessive force . . . , the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam). The reasonableness of a use of force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019). These factors are to be "judged from the perspective of a reasonable officer on the scene," recognizing "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. With respect to the second prong, for a right to be clearly established, "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (internal quotation marks and citation omitted). In order for an officer to be held to have been put on notice, there must exist a "controlling authority or a robust consensus of cases of persuasive authority" that makes clear his conduct would violate an arrestee's Fourth Amendment right. *See Liberian Comm. Assoc. of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (internal quotation marks and citations omitted). However, this question of whether a reasonable officer would understand that his conduct was unlawful, which goes to the second prong, is distinct from the question of whether the force itself is reasonable, which goes to the first.

Officer Greco concedes that genuine issues of material fact exist as to the first prong. In other words, he concedes that a jury viewing the facts in the light most favorable to Moran could conclude that, judged from the perspective of a reasonable officer on the scene, Officer Greco's actions constituted excessive force. However, Officer Greco contests the district court's conclusion as to the second prong—*i.e.*, he argues that, even drawing all reasonable inferences in Moran's favor regarding the factual situation Officer Greco faced, prevailing law would not have made it "clear to a reasonable officer that [Officer Greco's] conduct was unlawful." *City of Tahlequah*, 595 U.S. at 12 (internal quotation marks and citation omitted). We disagree, and no purely legal issue is therefore before us.

Under our caselaw, "it was well established [as of April 2000] that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010). Specifically, before the underlying incident here in May 2017, it already "was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020); *see also id.* at 237 (citing *Tracy*, 623 F.3d at 98); *McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018) (summary order) ("An officer's use of force must be reasonable even when an arrestee or detainee is actively resisting."). Moreover, although resistance to arrest "no doubt justifies the

8

officer's use of *some* degree of force," it does not "give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).[2]

Here, the facts viewed in the light most favorable to Moran are that Officer Greco torqued Moran's arm forward causing it to fracture, and that, at the time Officer Greco shifted Moran's arm, Moran was lying face down on the ground, surrounded by six officers who were either pinning Moran to the ground or, in the case of Officers Tornga and Greco, holding Moran's wrists. On those facts, a rational jury could find that, at the time of Officer Greco's use of force on Moran's left arm, Moran was no longer actively resisting arrest and that the use of force on that arm— which caused it to break—was gratuitous and objectively unreasonable under the totality of the circumstances. To be sure, officers stated in police reports and affidavits and testified at their depositions that Moran continued resisting arrest while he was lying on his stomach by, *inter alia*, attempting to kick his legs and preventing his arms from being cuffed together, and a jury could rationally credit their accounts. However, drawing all reasonable inferences in the record in Moran's favor, a rational jury could also discredit that testimony and conclude otherwise.[3] *See,*

---

[2] There may be circumstances, however, where it may not be a violation of clearly established law for officers to maintain force even after an arrestee has ceased resisting, because of a concern that the arrestee may resume resisting. *See McKinney v. City of Middletown*, 49 F.4th 730, 742 (2d Cir. 2022). Here, a reasonable jury could conclude that Moran had ceased resisting, and no longer posed a threat to the safety of the officers.

[3] Although Officer Greco suggests that "[t]he events which can be seen and heard on the [cellphone] video speak for themselves and present an undisputed version of the events," Appellant's Reply at 9, we are unpersuaded and conclude (as the district court did) that the video allows for competing reasonable inferences as to the disputed material issues of fact in this case, including as to whether Moran was actively resisting at the time Officer Greco applied the additional force to Moran's left arm and whether the significant force used was gratuitous at that point in time. *Compare Scott v. Harris*, 550 U.S. 372, 383–84 (2007) (finding qualified immunity at summary judgment where it was "clear from the videotape [of a high-speed car chase led by plaintiff] that [plaintiff] posed an actual and imminent threat to the lives of any

9

*e.g.*, *Lennox v. Miller*, 968 F.3d 150, 156 (2d Cir. 2020) (explaining, where plaintiffs and defendants contested the "nature and extent of [the plaintiff's] resistance," that "a jury could find that [defendant officer] used unreasonable force on an individual who was not resisting arrest and who was secured in such a manner that she posed no threat to public safety"); s*ee also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

Officer Greco suggests that, if reasonable officers could disagree as to whether Moran was resisting arrest when he applied the force that broke Moran's left arm, then the court should find that he is entitled to qualified immunity. That suggestion, which is the linchpin of Officer Greco's argument on appeal, misconstrues the two-prong framework for qualified immunity. We have repeatedly held that "disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) [are] the province of the jury, while the reasonableness of an officer's view of the law is decided by the district court." *Jones*, 963 F.3d at 231; *see also Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury. If there is no material question of fact, the court decides the qualified immunity issue as a matter of law." (internal citations omitted)); *Stephenson v. Doe*, 332 F.3d 68,

---

pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase"), *with Singh v. City of New York*, 23-24-cv, 2024 WL 319117, at \*6 (2d Cir. 2024) (summary order) (vacating grant of summary judgment for defendants where "the video . . . does not allow a factfinder to consider the nature and tone of the exchange between [plaintiff and defendant] immediately prior to the application of force. . . . [and] the vantage point of the video does not allow the factfinder to determine with pinpoint accuracy the distances between [plaintiff] and the officers at the time the force was applied and, under the totality of the circumstances, allows for fair debate about how [plaintiff's] movement would reasonably be perceived").

78 (2d Cir. 2003) ("[A]s the Supreme Court clarified in *Saucier*, claims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity."); *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 762 (2d Cir. 2003) ("Whether the officer is entitled to qualified immunity is resolved by the latter part of the *Saucier* analysis, which looks at an 'officer's mistake as to what the law requires[.]'" (quoting *Saucier*, 533 U.S. at 205)). In other words, "the legal inquiry necessitated by the defense of qualified immunity . . . requires that a court determine whether, under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions." *Poe v. Leonard*, 282 F.3d 123, 146 (2d Cir. 2002).

Therefore, given that a rational jury could find that Moran was not continuing to resist arrest when Officer Greco applied the force at issue, and thus that Officer Greco's use of force was objectively unreasonable, Officer Greco is not entitled to qualified immunity as a matter of law at the summary judgment stage because a reasonable officer in that scenario would have known that such force violates the constitutional prohibition, clearly established at the time of this incident, on the use of "significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones*, 963 F.3d at 225; *see also Lennox*, 968 F.3d at 157 ("Because a reasonable jury could find that the force used by [the officer] was significant and that [plaintiff] was not resisting when such force was used, we cannot say, as a matter of law, that [the officer] did not violate clearly established law."); *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) ("In this case it is impossible to determine whether the officers reasonably believed that their force was not excessive when several material facts are still in dispute, and therefore,

11

summary judgment on the basis of qualified immunity is precluded. . . . Genuine issues of material fact exist regarding whether [plaintiff] reached for his sock (and what inferences could reasonably be drawn from such an action) and whether [he] struck [defendant]." (alterations adopted) (internal quotation marks and citation omitted)); *see also Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997) (per curiam) (holding no qualified immunity on excessive force claim at summary judgment stage because "assuming as we must that [plaintiff] was offering no resistance *at all*, the considerable effort and force inferable from the grunt, [plaintiff's] sensation of a blow, and the broken arm was obviously unnecessary to restrain even a previously fractious arrestee").

Moreover, contrary to Officer Greco's contention, the fact that Moran's hands were not yet handcuffed at the time of the use of force causing the fracture to his arm does not necessitate a finding of qualified immunity as a matter of law. As we explained in *Jones*, "although the fact that a previously resisting arrestee had not yet been handcuffed may be an important factor in assessing the reasonableness of an officer's force, we have never held that the need to complete the arrest authorizes an additional level of force which would not be reasonably necessary to allow the officers to handcuff that arrestee safely and without further incident." 963 F.3d at 238; *see also Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) ("The officers could be entitled to a summary judgment only if there existed a *per se* rule that an arrestee's refusal to submit to the easy application of handcuffs always permitted police officers to use substantial force, including taking a person to the ground and incapacitating her with pepper s[p]ray, to accomplish handcuffing. We know of no such rule.").

In sum, given the district court's determination that there is sufficient evidence to create factual disputes on issues that are material to the resolution of the qualified immunity analysis, we

lack interlocutory jurisdiction to review the denial of qualified immunity at this juncture on Moran's Fourth Amendment claim of excessive force.[4] *See Doninger v. Niehoff*, 642 F.3d 334, 352 (2d Cir. 2011) ("We do not . . . have jurisdiction to review a denial of qualified immunity to the extent it is based on a district court's finding that there is enough evidence in the record to create a genuine issue as to factual questions that are, in fact, material to resolution of the qualified immunity claim."); *accord Jok v. City of Burlington, Vt.*, 96 F.4th 291 (2d Cir. 2024) (finding lack of appellate jurisdiction over denial of officer's motion for summary judgment based on qualified immunity where, *inter alia*, a factual dispute existed over whether plaintiff was resisting while officer attempted to handcuff him).

Therefore, we dismiss the appeal without expressing a view as to whether Officer Greco is ultimately entitled to judgment in his favor after a jury resolves the factual disputes.[5]

---

[4] For the same reasons, the disputed issues of fact preclude appellate review on summary judgment of the qualified immunity issue under Connecticut law for the pendent state-law claims of assault and battery against Officer Greco. *See Mulligan v. Rioux*, 229 Conn. 716, 727–28 (1994) (explaining "qualified immunity" under Connecticut law for municipal employees acting in the performance of discretionary governmental acts); *see also Jones v. Parmley*, 465 F.3d 46, 63–64 (2d Cir. 2006) (declining to find qualified immunity for state law claims, including assault and battery, due to disputed factual issues on the federal excessive force claim).

[5] We note that the parties may request that the district court utilize special interrogatories with the jury regarding the factual disputes to assist in the court's legal determination on the qualified immunity issue. *See Stephenson*, 332 F.3d at 81 ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide what the facts were that the officer faced or perceived and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts." (internal quotation marks and citation omitted)); *see also Jones*, 963 F.3d at 230 (analyzing special interrogatory where jury was asked whether plaintiff was still resisting arrest at the time of the officer's second use of a taser).

\*                    \*                    \*

We have considered Officer Greco's remaining arguments and find them to be without merit. Accordingly, we **DISMISS** the appeal for lack of appellate jurisdiction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14