17-3817-cv
Muschette v. Gionfriddo

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2018
No. 17-3817-cv

AUDLEY MUSCHETTE, ON BEHALF OF A.M.,
AND JUDITH MUSCHETTE, ON BEHALF OF A.M.,
*Plaintiffs-Appellees*,

*v.*

PAUL W. GIONFRIDDO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
*Defendant-Appellant*,

TOWN OF WEST HARTFORD, AMERICAN SCHOOL FOR THE DEAF, CHRISTOPHER LYTH,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, CHRIS HAMMOND, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES, JOHN DOE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
AND ELWIN ESPINOSA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,
*Defendants*.

ARGUED: SEPTEMBER 13, 2018
DECIDED: DECEMBER 7, 2018

Before:    WALKER, JACOBS, POOLER, *Circuit Judges*.

Plaintiffs Audley and Judith Muschette bring suit on behalf of their son, A.M., who was tased twice at his school by the defendant-appellant, Officer Paul Gionfriddo, following an incident between A.M. and his teacher. The United States District Court for the District of Connecticut (Eginton, J.) denied a summary judgment motion by Officer Gionfriddo seeking qualified immunity.

Because a reasonable officer could believe that, under the circumstances, the tasing of A.M. was lawful, we reverse.

ANDREW ROZYNSKI, EISENBERG & BAUM LLP, NEW YORK, NY, FOR THE PLAINTIFF-APPELLEE.

SCOTT M. KARSTEN (WITH DENNIS M. DURAO ON THE BRIEF), KARSTEN & TALLBERG, LLC, ROCKY HILL, CT, FOR THE DEFENDANT-APPELLANT.

DENNIS JACOBS, *Circuit Judge*:

Defendant-Appellant Paul Gionfriddo, a police officer in the town of West Hartford, appeals from the denial of his motion for qualified immunity in the United States District Court for the District of Connecticut (Eginton, J.). A.M. alleges that his Fourth Amendment right to be free from excessive force was violated when he was tased by Officer Gionfriddo following an incident at his school, the American School for the Deaf, in West Hartford, Connecticut. Officer Gionfriddo argues that he reasonably believed that the use of the taser was necessary to subdue A.M., because A.M. ignored his instructions, even after he warned A.M. that he would use the taser if his instructions were ignored. A.M.--who is deaf and communicates primarily in American Sign Language ("ASL")--disputes that he received the instructions and warnings. Officer Gionfriddo responds that it was reasonable for him to believe that his verbal instructions and warnings were translated to A.M. by the faculty members, because he observed them signing to A.M. when he gave the instructions and warnings.

Officer Gionfriddo moved for summary judgment on the ground of qualified immunity. The district court denied the motion, ruling that questions of fact precluded a ruling on qualified immunity. We reverse.

2

## BACKGROUND

The following facts are undisputed, unless otherwise noted.

The plaintiffs, Audley and Judith Muschette, are the parents of A.M., a 12-year-old boy who is profoundly deaf and communicates primarily in ASL. On April 30, 2013, A.M. got into a confrontation over a takeout food order with a teacher at his school. A.M. became angry, ran from the dorm, and entered a nearby, fenced-off construction area. The teacher, Christopher Hammond, followed. When Hammond approached, A.M. picked up a stick and hit Hammond. A.M. also threw rocks at Hammond, hitting him at least once. A.M. picked up a large rock in the construction area, Hammond and the other faculty who were gathered at the scene left the construction area, leaving A.M. sitting alone and holding the rock.

The Dean, Ron Davis, called 911 and reported a student was "out of control" and "making the situation dangerous". App'x 345-47. Officer Gionfriddo went to the school, and was soon joined by a second officer, Christopher Lyth. Dean Davis advised Officer Gionfriddo that A.M. had gotten into a disagreement with Hammond, and had been throwing things at staff members.

After the briefing, Officers Gionfriddo and Lyth approached the construction area with Hammond and Dean Davis, where A.M. remained sitting with a large rock in his hands. Dean Davis, Officer Gionfriddo, and Officer Lyth positioned themselves behind A.M., while Hammond stood approximately 15 feet in front of A.M., facing A.M., Dean Davis, and the officers. Officer Gionfriddo gave verbal instructions to put down the rock. Dean Davis translated the instructions into ASL, and Hammond, who was facing A.M., signed in A.M.'s direction. When A.M. did not let go of the rock, Officer Gionfriddo verbally warned A.M. that he would use the taser if A.M. did not put down the rock, and Davis again translated this message to Hammond, who signed toward A.M. When A.M. again appeared to ignore the warning, Officer Gionfriddo tased A.M., and Officer Lyth unsuccessfully attempted to get A.M. into handcuffs. After Officer Gionfriddo deployed the taser a second time, Officer Lyth was able to secure the handcuffs.

A.M. does not dispute that Officer Gionfriddo gave verbal instructions and warnings, or that Davis and Hammond were signing when those instructions

3

and warnings were given. But he denies that he actually received and understood any of those instructions or warnings, or even knew that police officers were at the school until he was tased. A.M. argues that Officer Gionfriddo's belief that his instructions and warnings were being translated and understood by A.M. was unreasonable, and therefore that Officer Gionfriddo's use of the taser was unreasonable.

Officer Gionfriddo moved for summary judgment on the ground of qualified immunity. The district court denied the motion, finding that "Gionfriddo's entitlement to immunity depends on factual disputes that will hinge on credibility determinations, which must be made by the jury." App'x 31.

This appeal followed.

## DISCUSSION

"Ordinarily, the denial of a motion for summary judgment is not immediately appealable because such a decision is not a final judgment." Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 760 (2d Cir. 2003) (internal quotation marks omitted). Jurisdiction nevertheless lies when (as here) the appellant argues entitlement to qualified immunity "even under plaintiff's version of the facts." Coons v. Casabella, 284 F.3d 437, 440 (2d Cir. 2002) (internal quotation marks omitted). Accordingly, all disputed facts are construed (and reasonable factual inferences are drawn) in A.M.'s favor.

We review the district court's summary judgment decision de novo. Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008). Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I.

"Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotation marks omitted). When a defendant invokes qualified immunity, courts consider whether the plaintiff has shown "(1) that the [defendant] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of

4

the challenged conduct." <u>Wood v. Moss</u>, 572 U.S. 744, 757 (2014) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" <u>Carroll v. Carman</u>, 135 S. Ct. 348, 350 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). Courts have discretion to decide the order in which they consider whether the officers violated a federal right and whether the right was clearly established. <u>Tolan v. Cotton</u>, 572 U.S. 650, 656 (2014).

Officer Gionfriddo does not argue on appeal that the plaintiff has failed to allege a constitutional violation (of the Fourth Amendment right to be free from excessive force), and we therefore decline to address whether there was such a violation. Instead, Officer Gionfriddo argues that he is entitled to qualified immunity because his use of force in this case did not violate any clearly established right or, alternatively, that it was objectively reasonable for him to believe that his conduct was lawful.

The primary factual dispute identified by the district court is whether Officer Gionfriddo's instructions and warnings were successfully conveyed to A.M. Officer Gionfriddo alleges that Hammond translated his verbal warnings to A.M. and that the warnings were understood by A.M. A.M. disputes this account. He argues that he was not disobeying the officer or resisting arrest, because the officer's instructions and warnings were not conveyed to him in ASL, and that the use of a taser under those circumstances was excessive.

It is clearly established that officers may not use a taser against a compliant or non-threatening suspect. <u>Tracy v. Freshwater</u>, 623 F.3d 90, 96-98 (2d Cir. 2010);[1] <u>see also</u> <u>Garcia v. Dutchess Cty.</u>, 43 F. Supp. 3d 281, 297 (S.D.N.Y. 2014) (concluding that it is clearly established in the Second Circuit that "it [is] a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety"). Under A.M.'s theory of the case, this clearly established right was violated. A.M. alleges that

---

[1] Although in 2013 there were relatively few excessive force cases involving a taser, "novel technology, without more, does not entitle an officer to qualified immunity." <u>Edrei v. Maguire</u>, 892 F.3d 525, 542 (2d Cir. 2018); <u>see also</u> <u>Terebesi v. Torreso</u>, 764 F.3d 217, 237 (2d Cir. 2014) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." (internal quotation marks omitted)).

his failure to comply with the instructions was not a choice to be non-compliant and threatening, but rather the result of his ignorance that any instructions were given. Therefore, the right A.M. argues was infringed--the right to be free from a taser when one is compliant with an officer's instructions and non-threatening--was clearly established.

However, Officer Gionfriddo is entitled to qualified immunity because it was objectively reasonable for him to believe that, given the undisputed facts, his conduct complied with this clearly established law.

"To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." Terebesi, 764 F.3d at 222. An officer is entitled to qualified immunity if "*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful". Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016). "[O]ur inquiry [on qualified immunity] is not whether the officer *should have* acted as he did. Nor is it whether a singular, hypothetical entity exemplifying the 'reasonable officer' . . . *would have* acted in the same way." Id. (citations omitted).

Given the undisputed facts of this case, we cannot say that no reasonable officer, situated as Officer Gionfriddo was, would have used a taser to secure A.M.

On arrival at the American School for the Deaf, Officer Gionfriddo was faced with a 12-year-old boy who had fled his dorm and hunkered down in a restricted construction area, holding a large rock. Officer Gionfriddo had been informed that A.M. had thrown a folding chair at a staff member, struck Hammond with a stick, and hurled rocks at Hammond and other staff members. Officer Gionfriddo therefore had a reasonable basis to believe that A.M. posed a threat to himself or the other staff members and that there was a risk of further flight over the terrain of a construction site.

Moreover, Officer Gionfriddo had a reasonable basis to believe that his instructions and warnings were being conveyed to A.M. and that A.M. was ignoring them. When Officer Gionfriddo approached A.M. in the construction area, he gave verbal instructions to A.M. to put down the rock. Officer

6

Gionfriddo observed Davis signing to Hammond, who in turn signed "very animated[ly and] very purposeful[ly]" to A.M. The intermediary signers were a teacher and a dean at a school for the deaf, who could be counted upon to communicate with a deaf student. When A.M. did not comply, Officer Gionfriddo verbally warned A.M. that he would use the taser if A.M. did not put down the rock, and Officer Gionfriddo again observed Davis signing to Hammond, who signed to A.M. It was only then--when it appeared to Officer Gionfriddo that A.M. was ignoring his instructions--that Officer Gionfriddo deployed the taser. Officer Gionfriddo deployed the taser a second time to allow Officer Lyth to secure handcuffs on A.M.

A.M. makes no argument that is particular to the second deployment. He argues that the second deployment was even more unreasonable, but he makes the same arguments as to both. See, e.g., Appellee's Br. 25-26 (arguing that Officer Gionfriddo tased A.M. because he was impatient and noting that fact is "solidified by the fact that he tasered A.M. a second time because P.O. Lyth was not on top of him within 5 seconds"). He does not argue that the second taser use was unreasonable even if the first was reasonable.

A.M. disputes whether he received Officer Gionfriddo's instructions, but "our focus is not on [A.M.'s] motivations but instead on the sequence of events from the perspective of a reasonable officer at the scene." Tracy, 623 F.3d at 97; see id. ("[F]rom [the officer's] perspective, Tracy appeared to fail to comply with a direct order and to instead actively resist arrest, thus necessitating a forceful response.").

Under these circumstances, we cannot say that no reasonable officer would have believed that the use of the taser to subdue A.M. was lawful. See id. (concluding that the use of a flashlight to subdue a suspect was objectively reasonable where suspect posed a "real and imminent" threat and "appeared to fail to comply with a direct order and to instead actively resist arrest"). We have repeatedly concluded in summary orders that it is not unreasonable for an officer to use a taser in analogous circumstances.[2]

---

[2] See Penree by Penree v. City of Utica, 694 F. App'x 30, 33 (2d Cir. 2017) ("Our precedents suggest that it is *not* excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest."); MacLeod v. Town of

A.M. argues that it was unreasonable for Officer Gionfriddo to believe that Hammond was conveying his instructions and warnings to A.M., because Officer Gionfriddo admitted that A.M.'s head was down and that he could not tell if A.M.'s eyes were open. But Officer Gionfriddo actually testified that he "saw A.M. shaking his head with his head down" after Hammond signed to him. App'x 158-59. In any event, one may be looking up even if one's head is down. And Officer Gionfriddo had a reasonable basis for presuming that his warnings were being conveyed to A.M.: he observed Hammond signing to A.M. after he gave verbal warnings (which supports an inference that Hammond believed that A.M. was seeing him), and Hammond gave no indication that he believed his communication to A.M. was unsuccessful.

A.M. also argues that Officer Gionfriddo's reliance on Hammond to accurately convey his instructions and warnings was unreasonable because Hammond was the victim of A.M.'s stick-hitting and rock-throwing. But a reasonable officer could believe that Hammond would fulfill his responsibility as a teacher (and a translator) to accurately convey serious warnings from a police officer, even if he had been the object of a student's tantrum. A reasonable officer need not assume that Hammond wished to harm a student in his charge, and would act on that wish by purposefully mistranslating Officer Gionfriddo's warnings. Moreover, Dean Davis, who was translating the warnings to Hammond, never indicated to Officer Gionfriddo that Hammond's translation was inaccurate.

Accordingly, because it was objectively reasonable for Officer Gionfriddo to believe that his conduct was lawful, he is entitled to qualified immunity.

---

Brattleboro, 548 F. App'x 6, 8 (2d Cir. 2013) (concluding that the use of a taser "to subdue an actively non-compliant suspect . . . who posed a real and imminent threat to the safety of the officers and any bystanders" was objectively reasonable where the officers gave "repeated, clear commands" to the plaintiff to return to the ground); Crowell v. Kirkpatrick, 400 F. App'x 592, 595 (2d Cir. 2010) (concluding that the use of a taser was objectively reasonable where the plaintiffs were resisting arrest by refusing to unchain themselves from a barrel and the officers warned the plaintiffs that they would be tased if they did not remove themselves from the barrel).

8

## CONCLUSION

The district court's decision denying Officer Gionfriddo's motion for summary judgment is reversed, and the case is remanded to the district court with instructions to enter judgment for Officer Gionfriddo on the ground of qualified immunity.