*Lennox v. Miller*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2019

Argued: March 6, 2020
Decided: July 29, 2020

Docket No. 19-1675

---

JESSICA A. LENNOX, INDIVIDUALLY AND AS MOTHER AND NATURAL GUARDIAN OF A.L., AN INFANT,

*Plaintiff-Appellee,*

V.

THOMAS MILLER, BRANDON CLARKE, INDIVIDUALLY AND AS A POLICE OFFICER OF THE CITY OF NORWICH, NEW YORK,

*Defendants-Appellants,*

RODNEY V. MARSH, INDIVIDUALLY AND AS CHIEF OF POLICE OF THE CITY OF NORWICH, CITY OF NORWICH, NEW YORK,

*Defendants.*

---

1

Appeal from the United States District Court
for the Northern District of New York
No. 17-cv-786 – Mae A. D'Agostino, *Judge*.

---

Before: HALL, LOHIER, and PARK, *Circuit Judges*.

Appellants Thomas Miller and Brandon Clarke appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) denying them qualified immunity for an excessive force claim (as to Clarke) and a failure to intervene claim (as to Miller). Because we agree that there are disputed issues of material fact that preclude, at this stage of the proceedings, a determination that Officer Clarke was entitled to qualified immunity as a matter of law, we affirm so much of the district court's order denying summary judgment to Officer Clarke. We hold that Officer Miller, however, is entitled to qualified immunity and reverse the judgment of the district court as to him.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

GREGG T. JOHNSON, Johnson & Laws, LLC, Clifton Park, NY, *for Appellants*.

Stephen L. Lockwood, Stephen L. Lockwood, P.C., Utica, NY, *for Appellee.*

---

HALL, *Circuit Judge*:

Plaintiff-Appellee Jessica Lennox sued Officers Thomas Miller and Brandon

Clarke of the City of Norwich Police Department for, *inter alia*, using excessive

force and failing to intervene during her arrest. Officers Miller and Clarke moved for summary judgment on the basis that they were protected from suit by the doctrine of qualified immunity, which the United States District Court for the Northern District of New York (D'Agostino, *J.*) denied. This is an interlocutory appeal from the district court's denial of qualified immunity.

**I.**

The relevant record facts, read in the light most favorable to Lennox as the non-movant, *see Lederman v. N.Y.C Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013), are as follows: On July 22, 2016, Lennox was driving past Cobbler Square Park when she saw her ex-boyfriend, Domenick Lepera, with a group of teenagers. She parked her car, got out (leaving the car door open and her four-year-old son A.L. in a car seat), and confronted Lepera, telling him to turn himself into the police because he had an outstanding arrest warrant. Lennox asked someone to call the police, and Lepera ran. Lennox then turned her attention to the group of teens, saying that Lepera was a heroin addict and drug dealer and asking them what they were doing and why they were hanging out with him. Lennox also said something similar to B.C., a teenage female who knew Lepera and to whom Lennox had spoken about Lepera earlier that day. As a result of this

3

incident, Lennox was charged with, among other things, endangering the welfare of a child pursuant to an information that alleged Lennox punched B.C. in the face. Though she was later convicted of this offense, Lennox denies ever having physical contact with B.C., but she admits that she may have raised her voice and cursed at the group of teenagers.

According to Lennox, at some point during this confrontation, A.L. took off his seatbelt, jumped out of the car, and came to Lennox. Lennox then walked back to her car with A.L. At that time Officer Miller arrived and told Lennox he had gotten a message from her and that he had tried calling her. Officer Clarke arrived shortly thereafter and approached Lennox. Lennox knew Officer Clarke from previous encounters with him, and she told him she did not "want to fight with" him. App. at 377, 813. Lennox asked Officer Clarke to arrest Lepera, and Officer Clarke cursed at Lennox. Lennox then put up her hands and said "You can stick up for a heroin addict. I'm done."[1] App. at 379. She picked up A.L., and Officer Clarke came up behind Lennox and grabbed her arms behind her back, causing A.L. to fall out of her arms and hit the ground. Officer Clarke handcuffed Lennox while she was standing and had no trouble doing so. Lennox testified that she

---

[1] Elsewhere, Lennox quotes herself slightly differently, as saying "keep standing up for a heroin addict, I'm done!" App. at 813.

4

"wanted to pull away from" Officer Clarke. App. at 381. When asked if she had tried to, she replied "I feel like I did but I feel like I couldn't. He was very strong. . . . he was just way too strong to even attempt anything." *Id.*

After handcuffing her, Officer Clarke threw Lennox face down on the grass. Lennox testified that she lifted her head up, made eye contact with Officer Miller, who testified that he was controlling the crowd of teenagers, and said "[h]elp me," but Officer Miller did nothing to intervene. App. at 382. Lennox testified further that, when she was on the ground, Officer Clarke put his body weight on her and "crushed [her] so hard that [she] urinated everywhere." App. at 387. Lennox later asked eyewitnesses what Officer Clarke was doing to crush her, and they explained that Officer Clarke had put both knees into her back. Lennox told Officer Clarke that she couldn't breathe, she had asthma, he was hurting her, and she was urinating on herself, to which Officer Clarke replied "[o]h you can breathe little bitch." App. at 814. Officer Clarke then took Lennox's head and "bashed" it on the ground, swung her up on her feet, and "pulled and pushed" her over to his police car. *Id.* He put her in the car and left her there with the windows rolled up and the engine off for about twenty minutes, during which Lennox was experiencing anxiety and asthma attacks.

The officers transported Lennox to the police station, where the record shows she was crying and screaming, repeatedly complaining that her handcuffs were too tight, and yelling about how Officer Clarke crushed her until she could not breathe, "pounded [her] head in," and made her bleed. *See* Special App. at 4. While at the station, Lennox yelled that she was in pain because her earring was stuck in her ear. The police brought Lennox to a hospital, where she received a CAT scan (which showed no abnormalities) and underwent a psychiatric evaluation. Lennox also testified that when she arrived at the hospital, she had bruises all over her, her ears were swollen and bleeding, her earrings were stuck in her ear, and there was blood in her ear drum. Her injuries from the incident— including arm bruises, a shoulder scrape, and injuries to her ears—took weeks to heal fully.

## II.

Lennox filed a personnel complaint with the Norwich Police Department for use of excessive force in connection with her arrest. She then filed a civil complaint on behalf of herself and her minor son, A.L., against Officers Miller and Clarke, Chief of Police Rodney Marsh, and the City of Norwich. In her complaint, Lennox alleged violations of her constitutional rights resulting from the use of

excessive force during her arrest and from various defendants' failure to intervene. She also asserted state-law claims for negligence and assault and battery, and a claim for municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1976). Following discovery, defendants moved for summary judgment. The district court granted summary judgment in defendants' favor as to A.L.'s claims, the claims against the City of Norwich and Chief Marsh, and the claim for negligence. The district court denied the motion for summary judgment on Lennox's assault and battery and excessive force claims against Officer Clarke, her failure to intervene claim against Officer Miller, and her punitive damages claims against Officers Miller and Clarke. In so doing, the district court explained that "[t]he record contains issues of fact as to whether the force used by Officer Clarke was reasonably related to the nature of Lennox's resistance," Special App. at 11, and pointed out the divergent accounts of Lennox's supposed attempt to flee and the force used by Officer Clarke to maintain control of Lennox. The district court thus held that Officer Clarke was not entitled to qualified immunity at this stage of the proceedings. The district court also explained that because "issues of fact exist as to whether Officer Miller had actual knowledge of Officer Clarke's use of force against Lennox and disregarded a reasonable opportunity to intervene on

7

her behalf," Special App. at 14, Officer Miller was similarly not entitled to qualified immunity.

**III.**

We ordinarily do not have jurisdiction to hear an appeal of a denial of summary judgment. Nonetheless, we have appellate jurisdiction to hear an interlocutory appeal from a district court's denial of qualified immunity "to the extent it can be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Terebesi v. Torreso*, 764 F.3d 217, 222 (2d Cir. 2014) (internal quotation marks omitted). That is, "even where the district court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant . . . contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (internal quotation marks omitted).[2] We review a district court's decision to deny summary judgment

---

[2] Appellants argue that they are entitled to qualified immunity as a matter of law because the "undisputed facts, supplemented by Plaintiff's version of the disputed facts, leads inescapably to the conclusion that neither the force used by Officer Clarke, nor the response by Officer Miller, violated the 'clearly established law' of this Circuit as of July 22, 2016." Appellants' Br. at 9. Notwithstanding this purported reliance on undisputed facts and disputed facts viewed in the light most favorable to Lennox, Appellants' brief

8

on the basis that an officer is not entitled to qualified immunity *de novo*, viewing the facts in the light most favorable to the plaintiff. *See Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019).

Officers Miller and Clarke contend that because their actions did not violate "clearly established law," the district court erred in denying them qualified immunity at this juncture. They argue that because "reasonableness is judged against the backdrop of the law at the time of the conduct," *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), and because the undisputed facts do not support a violation of law that was clearly established at the time of Lennox's arrest, Appellants are entitled to qualified immunity. For the reasons explained below, we hold that, viewing the facts in the light most favorable to Lennox, Officer Clarke could have violated law that was clearly established on July 22, 2016, and we therefore cannot say he is entitled to qualified immunity at this juncture. Officer Miller, on the other hand, is entitled to qualified immunity because there is no evidence that he had a

---

repeatedly glosses over relevant disputed facts, such as whether Officer Clarke put his body weight on Lennox, or treats disputed facts, such as the existence and extent of Lennox's physical resistance, as undisputed. We base our analysis not on the assertions made in Appellants' brief but on an independent review of the record, including the district court's explanation of facts in dispute. *See Cowan*, 352 F.3d at 761 ("We . . . have jurisdiction over the appeal to the extent it is based on either the undisputed facts or the version of the facts presented by [the non-movant], and we will disregard any disputed facts or facts that contradict [the non-movant's] version of events.").

9

reasonable opportunity to intervene or that his failure to do so contravened clearly established law.

## IV.

An officer may take advantage of qualified immunity, and thereby avoid liability for civil damages and the burdens of a lawsuit, if he demonstrates that his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted); *cf. Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) ("Qualified immunity [is] an affirmative defense on which the defendant officials bear the burden of proof"). "There are therefore two steps to the qualified immunity analysis: first, whether the plaintiff established that his constitutional rights were violated, and second, whether the right at issue was 'clearly established' at the time of the alleged violation." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

### A. Officer Clarke

A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is "'objectively [un]reasonable' in light of the facts

10

and circumstances confronting" the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). A determination of whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "[I]n light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (internal quotation marks and alteration omitted).

In denying qualified immunity to Officer Clarke, the district court explained that it "cannot say as a matter of law that the amount of force used by Officer Clarke was objectively reasonable," Special App. at 11. This conclusion rests on the existence of factual disputes—over Lennox's attempt to flee and the extent of any physical resistance, as well as the force used by Officer Clarke in effectuating the arrest—that bear on "whether the force used by Officer Clarke was reasonably related to the nature of Lennox's resistance." *Id.* We pause here to review briefly

11

the record facts (both undisputed and, where disputed, in the light most favorable to plaintiff) relevant to each issue.

As to the nature and extent of Lennox's resistance, it is undisputed that in the moments before Officer Clarke brought Lennox to the ground, Officer Clarke had already handcuffed Lennox. Officer Clarke asserts that Lennox tried to pull away from him after he handcuffed her. It is true that Lennox testified that she felt like she tried to pull away from Officer Clarke while she was handcuffed, but she also said that she felt as though she could not do so because Officer Clarke was too strong and that he had no problem controlling her. Testimony that someone *felt* like she *tried* to do something but also felt as though she could not does not equate to testimony that she, in fact, did that thing. At this stage in the proceedings we must read Lennox's testimony as contradicting Officer Clarke's assertion. This is particularly so because Lennox also testified that "[w]hen [Officer Clarke] grabbed me, there was no movement, I couldn't move my arms and I had bruises from that," App. at 199, and she expressly denied that she attempted to flee from Officer Clarke. On the record before us, a reasonable jury could find that Lennox was not physically resisting arrest before she was brought to the ground.

There also exist disputes of fact over how much force Officer Clarke used to maintain control over Lennox once she was handcuffed and secured on the ground. *See Sullivan v. Gagnier*, 225 F.3d 161, 165-66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit."). Officer Clarke denied that he put his body weight on Lennox once she was on the ground, testifying that Lennox "wasn't being that physically difficult to deal with" at that point. App. at 137. According to Lennox's version of events, however, Officer Clarke put his full body weight on her, kneeling on her back, and slammed her head into the ground, notwithstanding the fact that she had already been handcuffed and positioned face down. There is also no evidence compelling a conclusion that Lennox physically resisted Officer Clarke once she was handcuffed and on the ground. On this record, a jury could find that Officer Clarke used unreasonable force on an individual who was not resisting arrest and who was secured in such a manner that she posed no threat to public safety.

Officer Clarke asserts he is entitled to qualified immunity because his actions, even viewed in the light most favorable to Lennox, did not violate "clearly

established" law.  The operative question thus becomes whether it was clearly impermissible on July 22, 2016 under the circumstances presented for a police officer to use the force that a jury could find Officer Clarke used—that is, when the handcuffed arrestee was not actively resisting arrest—to take down that arrestee, kneel on top of her with his full body weight, and slam her head into the ground.

Courts are cautioned not to define clearly established law at "a high level of generality," and "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."  *Kisela*, 138 S. Ct. at 1152, 1153 (internal quotation marks omitted).  That is not to say that there must be "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).

Years before the incident at issue here, we took note of the "well established" principle "that the use of entirely gratuitous force is unreasonable and therefore excessive."  *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).  In *Tracy*, we presumed that "no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee," *id.*, an act we held could constitute excessive force.  We have noted that,

14

under *Tracy*, "[i]t is clearly established that officers may not use a taser against a compliant or non-threatening suspect," *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018), even though the precise method of excessive force used in *Muschette* had not been explicitly proscribed. *Id.* at 69 n.1 (explaining that "[a]lthough in 2013 there were relatively few excessive force cases involving a taser, novel technology, without more, does not entitle an officer to qualified immunity" (internal quotation marks omitted)). And we have not limited potential findings of excessive force to situations where officers were using equipment like pepper spray or tasers. *See, e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (refusing to grant summary judgment in favor of a police officer who allegedly shoved a handcuffed arrestee headfirst into a police car, causing her to strike her head on a part of the car); *cf. Muschette*, 910 F.3d at 69–70 (citing with approval *Garcia v. Dutchess County*, 43 F. Supp. 3d 281, 297 (S.D.N.Y. 2014), for the proposition that using "'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety" is a clearly established Fourth Amendment violation in the Second Circuit).

On July 22, 2016, it was therefore clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is

15

not actively resisting. *Jones v. Treubig*, 963 F. 3d 214, 225 (2d Cir. 2020) ("Before the incident at issue here in April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others."); *cf. Brown v. City of New York*, 862 F.3d 182, 191 (2d Cir. 2017) (upholding grant of qualified immunity to officers who used force against an actively resisting, non-handcuffed arrestee and distinguishing cases where force was found impermissible because police were either not attempting to overcome resistance to arrest or the arrestee was already secured). As *Muschette* suggests, and as we have recently explained in great detail in *Jones v. Treubig*, this is true despite differences in the precise method by which that force was conveyed. Because a reasonable jury could find that the force used by Officer Clarke was significant and that Lennox was not resisting when such force was used, we cannot say, as a matter of law, that Officer Clarke did not violate clearly established law. The district court thus properly denied Officer Clarke qualified immunity at this stage of the proceedings, and we affirm this denial without expressing a view as to Officer Clarke's ultimate entitlement to judgment in his favor after factual disputes are resolved.

**B. Officer Miller**

The district court denied qualified immunity to Officer Miller on the basis that the record left open the possibility that Officer Miller witnessed Officer Clarke's takedown of Lennox. The district court reasoned, "issues of fact exist as to whether Officer Miller had actual knowledge of Officer Clarke's use of force against Lennox and disregarded a reasonable opportunity to intervene on her behalf," Special App. at 14, and on that basis ruled that Officer Miller was not entitled to qualified immunity. While we recognize the existence of disputed facts as to Officer Miller's knowledge of Officer Clarke's actions, we disagree with the district court's ultimate holding.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). There is no dispute that at the time Officer Clarke used force against Lennox, Officer Miller was engaged in crowd control. Even assuming that Officer Miller observed Officer

17

Clarke's use of force, there is no evidence in the record that would suggest he had a realistic opportunity to intervene that he then disregarded. Nor do we know of any clearly established law that would require him to abandon his crowd control duties and intervene to stop Officer Clarke's use of force. Thus, Officer Miller was entitled to summary judgment on the basis of qualified immunity, and we reverse the judgment as to him.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's denial of summary judgment as to Officer Clarke and REVERSE the district court's denial of summary judgment as to Officer Miller. We REMAND the case for further proceedings consistent with this opinion.