**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term 2019

(Argued: January 10, 2020          Decided: August 28, 2020)

Docket No. 19-0891

_____

MARIO FRANCO,

*Plaintiff - Appellee,*

v.

POLICE OFFICER JOHN GUNSALUS, 0453, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS, POLICE OFFICER SHAWN KELLY, 279, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS,

*Defendants - Appellants,*

CITY OF SYRACUSE, POLICE OFFICER WILLIAM LASHOMB, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS, POLICE OFFICER JOSEPH MAURO, 132, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS, UNIDENTIFIED SYRACUSE POLICE OFFICERS, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS,

*Defendants.*

Before: CALABRESI, POOLER, AND CARNEY, *Circuit Judges.*

_____

Interlocutory appeal from a decision and order of the United States District Court for the Northern District of New York (Scullin, *J.*) denying qualified

immunity to Officers Gunsalus and Kelly. Appellee was arrested and charged with disorderly conduct, resisting arrest, and harassment after allegedly failing to heed Officer Gunsalus's order to leave the area. Appellee insists that no such order was given. He was acquitted on all charges at trial and brought this action under 42 U.S.C. § 1983, asserting, *inter alia*, claims of excessive force, false arrest, and malicious prosecution. The officers moved for summary judgment on the basis of qualified immunity. But the district court denied the motion, concluding that a genuine issue of fact existed as to whether Officer Gunsalus gave verbal commands to disperse. The officers appealed.

Because we agree that a genuine dispute of material fact exists, we dismiss this case for lack of appellate jurisdiction.

---

Christina F. DeJoseph, Corporation Counsel for the City of Syracuse, *in support of Defendants-Appellants*.

Fred B. Lichtmacher, *The Law Office of Fred Lichtmacher P.C.*, New York, NY, *in support of Plaintiff-Appellee*.

---

GUIDO CALABRESI, *Circuit Judge*:

This case requires us to consider the scope of our subject matter jurisdiction when defendants' motion for summary judgment on the basis of qualified

immunity is denied by the district court upon finding that genuine issues of material fact remain to be decided at trial. We conclude that governing case law in this circuit requires that we dismiss the case for lack of appellate jurisdiction.

**BACKGROUND**

A. **Factual History**

At approximately 11:30 PM on July 4, 2014, Plaintiff-Appellee Mario Franco drove to a house party on Victoria Place in Syracuse, New York. Franco learned about the party from a friend, Elijah Johnson, who went to the party in a separate car with three other people. That car was driven by Patrick Johnson. When Elijah and his friends arrived at Victoria Place, they discovered the party was breaking up and that police officers were clearing people out of the house. Around sixty or seventy people were on the street and sidewalk nearby. Patrick passed the house and parked at the end of Victoria Place. Patrick and his passengers then discussed what to do next while waiting for Franco to arrive in his car.[1]

---

[1] At some point, Franco called Patrick on his cell phone, and Patrick passed the phone to Elijah. Elijah advised Franco not to come to Victoria Place because the police were there, but Franco was already on his way.

Franco arrived at Victoria Place and parked his car. He recognized Patrick's blue Cadillac on the opposite end of the street and walked towards it. Franco testified that he saw a police vehicle approach the house near the middle of Victoria Place where the party had been taking place, but he did not hear an officer make any announcement over a loudspeaker or otherwise.[2]

When he arrived at his friend's car, Franco leaned his head into the driver's side window and asked the occupants about what happened at the party and where they planned to go next. Franco denied that any of the occupants told him the police had been trying to clear people off the street. He also denied seeing a police officer walking toward him.

As Franco leaned inside his friend's car, Defendant-Appellant Officer John Gunsalus approached him from behind. Franco asserts that he did not hear the officer say anything. And Elijah, who was sitting in the front passenger seat, also testified that he did not hear a police officer tell Franco or anyone else that they should leave.

---

[2] Elijah also denied hearing a police officer in any way announce that people should disperse or otherwise give orders to people on Victoria Place to leave the area.

According to Franco, Officer Gunsalus grabbed him by his shoulders and aggressively turned him around. The officer asked him, "Are you hard of hearing, motherfucker?"[3] App'x 149. The officer then pinned Franco against the car, hit him in the head with his forearm, knocked him to the ground, and stuck his knee into Franco's back.

A second police officer, Defendant-Appellant Officer Shawn Kelly, appeared on the scene as Officer Gunsalus pinned Franco to the ground, and Officer Kelly began punching Franco in the ribs. Franco insists he did not put his hands on either officer or resist at any time during the encounter. Officer Gunsalus ultimately handcuffed Franco and put him in the back of the police vehicle. Franco claims that as a result of the officers' unprovoked violence, he sustained injuries to his face, arm, stomach, and ribs, and that he also suffered headaches.

The officers describe the encounter differently. Officer Gunsalus insists that after he arrived at Victoria Place, he made two announcements on his vehicle's loudspeaker in an attempt to get people to disperse from the area. The crowd began to disband, and Officer Gunsalus left his vehicle and proceeded on foot in

---

[3] Elijah testified that the officer said, "You don't like to fucking listen." App'x 328.

order to get those who lingered to leave. Officer Gunsalus saw Franco leaning into a Cadillac and, from where he was standing about three to four car lengths away, gave him a verbal command: "Time to go. You got to leave the area." App'x 558. Officer Gunsalus further testified that Franco, rather than starting to leave, "glanced over at myself and Officer Kelly," made eye contact, and "kind of smirked and went back to speaking with the individuals in the Cadillac." App'x 558.

Officer Gunsalus testified that he then approached Franco from his right side, placed his hand on his back, informed him he was under arrest, and ordered him to put his hands behind his back. Officer Gunsalus asserted that Franco then spun around, grabbed Officer Gunsalus's shirtsleeves, and tried to push him away. Both Officer Gunsalus and Officer Kelly gave several verbal commands to stop resisting, and when Franco did not comply, Officer Gunsalus "delivered one closed-fist strike to the left side of his face." App'x 563–64.

Franco lost his balance and both he and Officer Gunsalus fell to the ground. As they did so, Officer Gunsalus "unintentional[ly]" struck Franco in his stomach. App'x 565. Officer Gunsalus flipped Franco into a prone position, and with Officer

Kelly's assistance, handcuffed him. The officers put him in the back of a patrol vehicle.

**B. Procedural History**

Franco was charged with and prosecuted for disorderly conduct, resisting arrest, and harassment. He was acquitted of all charges at trial.

Franco then brought this federal action pursuant to 42 U.S.C. § 1983, alleging excessive force, failure to intervene, false arrest, malicious prosecution, deprivation of liberty without due process, and illegal seizure of property by the officers, and a claim under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) against the City of Syracuse. The defendant officers moved for summary judgment on all but the excessive force claim. The officers also claimed they were entitled to qualified immunity as to Franco's false arrest, malicious prosecution, and illegal seizure claims.

The district court entered its decision and order on March 28, 2019 granting the officers summary judgment as to most of Franco's claims and granting the City of Syracuse summary judgment with respect to Franco's *Monell* claim, but denying the officers' motion with respect to:

(1) the failure to intervene in the use of excessive force claim against Officer Kelly;

(2) the claims of false arrest and malicious prosecution against Officers Gunsalus and Kelly; and

(3) the defense of qualified immunity.

With respect to qualified immunity, the district court concluded that Franco sufficiently alleged facts creating a genuine dispute as to whether Officer Gunsalus had given verbal commands to disperse before Franco's arrest. The court noted that if Officer Gunsalus failed to make verbal commands to disperse and Officer Kelly was aware of his failure to do so, "it would be objectively unreasonable for either of them to believe probable cause existed." Special App'x 19. Accordingly, the court denied the officers' motion for summary judgment based on qualified immunity.

Officers Gunsalus and Kelly filed a timely notice of interlocutory appeal on the portion of the district court's order denying qualified immunity.

**DISCUSSION**

Although neither party expressly argues that we lack appellate jurisdiction to hear this appeal, "we have an independent obligation to consider the presence or absence of subject matter jurisdiction *[nostra] sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). In *Mitchell v. Forsyth*, the Supreme Court held that a district court's denial of a claim of qualified immunity, "to the extent that it turns on an

issue of law," is an immediately appealable "'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. 511, 530 (1985). This is so because qualified immunity provides a defendant with "*immunity from suit* rather than a mere defense to liability," a defense that is "effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526.

Where instead there remains a genuine factual dispute, the existence of qualified immunity cannot be determined until the factual dispute is resolved. And an appellate court lacks jurisdiction to review a denial of qualified immunity by a district court based on the existence of such a factual dispute. *See Reyes v. Fischer*, 934 F.3d 97, 106–07 (2d Cir. 2019) (noting that "[f]actual questions that are crucial to the disposition of the defendants' qualified immunity defense remain" and therefore dismissing for lack of jurisdiction the relevant part of the appeal); *Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) (per curiam) (concluding "that we lack jurisdiction to consider the qualified immunity defense at this time . . . because it depends on the resolution of factual disputes"); *Ellington v. Whiting*, 807 F. App'x 67, 69 (2d Cir. 2020) (summary order) (concluding that the district court's resolution of the qualified immunity determination "depends on disputed matters of fact and thus we lack jurisdiction").

Defendants wishing to obtain immediate review of a denial of qualified immunity may nonetheless do so by accepting, for purposes of the appeal only, plaintiff's version of the disputed facts. *See Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (exercising appellate jurisdiction over an appeal that "turn[ed] on the district court's determination of whether genuine issues of material fact exist" because the defendant agreed to rely on facts the plaintiff alleged or admitted for the purposes of the appeal).

All this is clear enough. A difficulty arises, however, when defendants claim that the plaintiff's evidence is not sufficient to raise a genuine issue of fact. The Supreme Court faced this issue in *Johnson v. Jones*, 515 U.S. 304 (1995). It there held that a district court's determination only of "a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial" is not appealable. *Id.* at 313.

One may question whether in some circumstances a trial court's decision concerning the sufficiency of the evidence is so clearly wrong as to constitute a legal error and thus be appealable. And the Supreme Court itself may not always

have given clear guidance as to this issue.[4] Our court, however, has seemingly routinely followed *Johnson*'s rule and has observed, "[t]he Supreme Court has made it clear that we lack appellate jurisdiction to decide an interlocutory appeal from a district court's denial of a claim of qualified immunity to the extent that the denial involves only a question of evidence sufficiency." *Taylor v. Rogich*, 781 F.3d 647, 649 (2d Cir. 2015) (citing *Johnson*, 515 U.S. at 313); *see also Swain v. Town of Wappinger*, 805 F. App'x 61, 62 (2d Cir. 2020) (summary order) ("If the District Court says the evidence was sufficient to create a jury issue, then that is the end of our review.").

In the case before us, the defendant officers do not argue that they are entitled to qualified immunity on the basis of stipulated facts or on the facts that Franco alleges are true. *Cf. Terebesi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014). Nor does this appeal on its face seem to raise a "purely legal question."[5] *Mitchell*, 472

---

[4] *See Tuuamalemalo v. Greene*, 946 F.3d 471, 480, 484 (9th Cir. 2019) (Fletcher, *J.*, concurring) (reviewing the "persistent confusion" the Supreme Court's case law has created in intermediate courts of appeals, and suggesting that the Court's case law since *Johnson* has limited that case to its facts).

[5] Defendants insist that this court has jurisdiction "because the trial court's denial of qualified immunity constitutes a final appealable order, which turns on questions of law." Appellant's Br. 1–2. But defendants do not specify what questions of law remain for this court to decide, and as our discussion will show, we do not discern any.

U.S. at 530.  Indeed, the only possible legal issue before us is whether the district court here erred as a matter of law when it concluded that a genuine dispute of material fact existed as to "whether Defendant Gunsalus gave verbal commands to disperse prior to his arresting Plaintiff" and therefore "whether there was probable cause for that arrest."  Sp. App'x 11.

The officers attempt to shoehorn the record into one that would confer jurisdiction by arguing that Franco does not dispute that a dispersal order was *given*, only that he did not *hear* such an order.  But Franco clearly did assert that no order was given.  *See, e.g.*, Appellee's Br. 8.  And the only practical way in which Franco could support that assertion and challenge whether Officer Gunsalus gave a dispersal order was to testify, as he did, that he did not hear such an order.  Elijah, who was sitting in the car's front passenger seat, testified to the same effect.  Furthermore, during his deposition, Franco was asked whether, while he was standing next to his friend's car, "a police officer was walking towards you and *told you* to leave the area."  App'x 144 (emphasis added).  Franco responded in the negative, thereby denying that he was told to leave.

Had Franco entirely failed to allege that no dispersal order was given, that would be a different matter.  But the record assures us that this is not the case here.

As the district court recognized, by offering evidence that no dispersal order was heard under circumstances where such an order would have been heard had one been given, Franco both asserted that no order was given and created a genuine dispute of a material fact as to whether one had, in fact, been given.

As a general matter, it would make little sense to require percipient witnesses to testify not only that they did not hear a dispersal order given but also to testify (as against merely asserting) that no such order was given. Indeed, we struggle to imagine what evidence Franco could have summoned to controvert defendants' testimony that a dispersal order was given other than the testimony that neither he nor Elijah heard a dispersal order.

Defendants argue that we should follow the approach employed in *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65 (2d Cir. 2018), where the court focused on evidence demonstrating that there was a reasonable basis for the defendant officer to believe that an order was given, rather than heard. In *Muschette*, the parents of A.M., a 12-year-old student who is deaf and communicates primarily in American Sign Language, argued that the defendant officer used excessive force when he tased A.M. after a confrontation with a teacher at a school. *Id.* at 67. But in that case, the plaintiffs did not dispute that the

officer actually gave verbal instructions and warnings to A.M. Similarly, in *Caravalho v. City of New York*, 732 F. App'x 18 (2d Cir. 2018), also relied on by defendants, the court expressly observed that "[p]laintiffs do not contest that officers made several announcements ordering protesters to disperse." *Id.* at 22.

Accordingly, the district court did not err as a matter of law when it determined that plaintiffs' testimony establishes a genuine issue of material fact as to whether an order was given, and it is properly up to a jury—not a court of appeals—to determine whether to believe that testimony.[6]

Defendants also argue that the relevant question is the officers' perception, rather than Franco's—in other words, whether there is enough evidence that a reasonable officer would have believed that other officers gave a dispersal order in a manner that Franco would have heard. And were we to conclude that appellate jurisdiction lies, we would indeed have to consider whether the officers had "arguable probable cause" to arrest Franco. *Garcia v. Does*, 779 F.3d 84, 92 (2d

---

[6] The record certainly contains evidence from which a jury could reasonably conclude that officers did make a dispersal order, for example Franco's testimony that when Officer Gunsalus reached him, the officer asked him, "Are you hard of hearing, motherfucker?" App'x 149. This statement supports the officers' argument that they gave a dispersal order which Franco ignored or did not hear before they arrested him. But a jury could also conclude that Officer Gunsalus made such a statement to Franco to support an argument that an order had been given when none had in fact been made.

Cir. 2015) (as amended) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). This in turn would involve determining whether "(a) it was objectively reasonable for the officer[s] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (internal quotation marks omitted). But defendants have not argued that even if no dispersal order was given, the circumstances were such that a reasonable officer would have believed that such an order was made so that the defendants had arguable probable cause to arrest Franco.[7]

For all these reasons, the district court did not err by concluding that genuine issues of material fact remain to be resolved at trial. Its decision therefore is not properly appealable.

## CONCLUSION

We DISMISS the appeal for lack of appellate jurisdiction.

---

[7] Even if we were to assume this argument had been made, defendants offer no substantive discussion to support it. Put differently, defendants do not proffer evidence that, assuming no dispersal order was given but a reasonable officer might have believed one was made, arguable probable cause existed. Rather than rule against them for failing to support any argument to this effect with evidence from the record, we think it best to treat the argument as not having been made and to allow defendants to raise it later if they wish.